NOT FOR PUBLICATION                                        (Docket No. 22)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

_____
                                        :
DOROTHY LOWE,                           :
                                        :
            Plaintiff,                  :
                                        :
      v.                                :     Civil No. 07-3024 (RBK)
                                        :     **OPINION**
BOROUGH OF COLLINGSWOOD , et al.,       :
                                        :
            Defendants.                 :
_____:

**KUGLER**, United States District Judge:

Before the Court is a motion filed by Defendants Borough of Collingswood,

Collingswood Police Department, Officer Glenn Prince, Chief of Police Thomas J. Garrity, Jr.,

and John Doe Police Employees 1-15 (collectively "Defendants") for summary judgment on the

Complaint of Plaintiff Dorothy Lowe ("Plaintiff").  Plaintiff's Complaint makes claims pursuant

to 42 U.S.C. § 1983, alleging that Defendants violated her Fourth and Fourteenth Amendment

rights, and makes various claims pursuant to state common law.  For the reasons expressed

below, the Court will grant Defendants' motion.

## I.      BACKGROUND

Plaintiff is the primary care giver for Susie Dixon, a senior citizen who at the relevant

time was 92 years old and who takes regular medication and suffers from mild dementia.  A

police report submitted as evidence by the Defendants in this case shows that on October 4,

2006, a patrolman with the Collingswood Police Department was dispatched to an apartment

building in Collingswood after someone called the police when they found Dixon, in a nightgown and socks, disoriented in the lobby of the building.  The responding officer reported that Dixon identified herself to him and provided him with an address in Philadelphia where Dixon said she lived.  Finding no missing person description matching Dixon, nor any employee of the building in Collingswood who knew Dixon, police took her to the police station and requested that Philadelphia police visit the address where Dixon said she lived in Philadelphia.

That same day, Plaintiff had left Dixon in Plaintiff's apartment in Collingswood at approximately 6:45 a.m.  Plaintiff represents that Dixon had frequent visits from a friend and denies Defendants' contention that there were no arrangements for anyone to check on Dixon throughout the course of the day.  Plaintiff did not have contact with Dixon during the day.  After work on October 4, 2006, Plaintiff went to Dixon's address in Philadelphia to collect an electric bill, when she was informed by a relative that Dixon had been picked up by the police.

After speaking with the same relative, police contacted Plaintiff to inform her that Dixon was at the police station.  Upon arrival at the station, Plaintiff was questioned by Defendant Officer Glenn Prince and further interviewed by Detective Brad Boyer.  Prince discussed the interview with Boyer and consulted Dixon's regular physician, Dr. Honish, by phone. Prince also consulted a municipal court judge who authorized Prince to charge Plaintiff with a violation of N.J. Stat. Ann. 2C:24-8, neglect of elderly or disabled persons.  Plaintiff was given a copy of the complaint against her, then was processed and released.  The Camden County Prosecutor's Office subsequently administratively dismissed the charge against Plaintiff.

Plaintiff brought suit in this Court alleging violations her rights under federal and state law.  Defendants moved for summary judgment to dismiss all claims in Plaintiff's Complaint.

## II.      DISCUSSION

### A.      SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could find for the non-moving party." Anderson v. Liberty Lobby, Inc, 477 U.S. 242, 248 (1986).  When the Court weighs the evidence presented by the parties, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her]favor." Id. at 255.

The burden of establishing the nonexistence of a "genuine issue" is on the party moving for summary judgment. Celotex, 477 U.S. at 330.  The moving party may satisfy this burden by either (1) submitting affirmative evidence that negates an essential element of the nonmoving party's claim; or (2) demonstrating to the Court that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's case.  Id. at 331.

Once the moving party satisfies this initial burden, the nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  To do so, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Rather, to survive summary judgment, the nonmoving party must "make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Furthermore, "[w]hen opposing

summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 2007 WL 2709661 at *1 (3d Cir. Sept. 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003)).

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. Credibility determinations are the province of the factfinder, not the district court. BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

**B.     ANALYSIS**

**1.     Plaintiff's Civil Rights Claims**

Plaintiff alleges that Defendants violated her Fourth and Fourteenth Amendment rights when they allegedly committed false arrest and false imprisonment. Defendants contend that they are entitled to summary judgment on Plaintiff's § 1983 claims because there was probable cause to arrest her. It is well established in the Third Circuit that an arrest without probable cause is a constitutional violation actionable under § 1983. See Walmsley v. Philadelphia, 872 F.2d 546 (3d Cir. 1989); see also Albright v. Oliver, 510 U.S. 266, 274 (1994). To state a claim for false arrest, a plaintiff must allege two elements: (1) that there was an arrest; and (2) that the arrest was made without probable cause. Dowling v. City of Philadelphia, 855 F.2d 136, 141 (3d Cir. 1988). It is similarly well established that "where the police lack probable cause to make an arrest, the arrestee has a claim under § 1983 for false imprisonment based on a detention pursuant to that arrest. A false imprisonment claim under § 1983 which is based on an arrest made

4

without probable cause is grounded in the Fourth Amendment's guarantee against unreasonable seizures." Groman v. Township of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995).

A defense to an unlawful arrest claim is that the police officer defendants acted with probable cause. Sharrar v. Felsing, 128 F.3d 810, 817-18 (3d Cir. 1997). Similarly, "an arrest based on probable cause could not become the source of a claim for false imprisonment." Groman, 47 F.3d at 636 (citing Baker v. McCollan, 443 U.S. 137, 142 (1979)).

Therefore, in the case presently before this Court, Defendants are entitled to summary judgment if the facts, taken in a light most favorable to Plaintiff, show that Defendants had probable cause to arrest Plaintiff. To establish the absence of probable cause, a plaintiff must show "that at the time when the defendant put the proceedings in motion the circumstances were such as not to warrant an ordinary prudent individual in believing that an offense had been committed." Lind v. Schmid, 337 A.2d 365, 369 (N.J. 1975). "Probable cause . . . requires more than mere suspicion; however, it does not require that the officer have evidence to prove guilt beyond a reasonable doubt." Orsatti v. New Jersey State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Rather, probable cause exists when the facts and circumstances are "sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111 (1975) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).

N.J. Stat. Ann. 2C:24-8 provides that:

A person having a legal duty to care for or who has assumed continuing responsibility for the care of a person 60 years of age or older or a disabled adult, who abandons the elderly person or disabled adult or unreasonably neglects to do or fails to permit to be done any act necessary for the physical or mental health of the elderly person or disabled adult, is guilty of a crime of the third degree. For purposes

of this section "abandon" means the willful desertion or forsaking of an elderly person or disabled adult.

The parties agree that in October 2006, Dixon then 92 and living under Plaintiff's care, was found in the lobby of an apartment building where Dixon lived with Plaintiff. The parties further agree that Prince consulted with Dixon's doctor, Dr. Honish, before deciding to charge Plaintiff with endangering the welfare of an elderly or disabled person, N.J. Stat. Ann. 2C:24-8. The precise details of Honish and Prince's conversation are disputed by the parties. The parties disagree whether Honish told Prince that Dixon suffered from dementia or mild dementia. Plaintiff contends that Honish told Prince that Dixon had mild dementia and was safe if left alone and not at risk of hurting herself. The only evidence Plaintiff provides in support of this proposition is an unsworn letter from Honish dated November 20, 2006, more than a month after the incident giving rise to this action. Honish wrote, "Dixon has become more forgetful," but she has never been deemed to be "at risk of hurting herself if left alone or unsupervised." The issue of exactly what Honish told Prince is disputed, however, the fact that Honish told Prince that Dixon suffered from some form dementia is agreed upon by the parties.

Plaintiff claims that Prince failed to accept Plaintiff's assertion that she had never been told that Dixon required constant care. Plaintiff contends that instead, Prince surmised from his own observations and his phone call with Honish that Plaintiff had neglected Dixon by failing to adequately care for her. In so doing, Plaintiff claims that Defendants violated her civil rights. Plaintiff claims that, prior to her arrest, she told Boyer that Honish had never given her instructions to supervise Dixon at all times, and that if Defendants had conducted a proper investigation, they would not have arrested Plaintiff. Plaintiff further notes that criminal charges

against her were dropped, which she attributes to a lack of evidence that she committed the charged offense.

Whether Plaintiff was actually guilty of the crime for which she was arrested is immaterial when determining whether the police had probable cause to arrest her. See Dowling, 855 F.2d at 141 ("The proper inquiry in a section 1983 claim based on false arrest . . . is not whether the person arrested in fact committed the offense but whether the arresting officers had probable cause to believe the person arrested had committed the offense."). In this matter, Plaintiff does not allege facts, nor does she dispute Defendants' factual assertions, sufficiently to allow a finder of fact to determine that she was arrested without probable cause. It is irrelevant whether Honish told Prince that Dixon was demented or mildly demented on the night in question. Further, Plaintiff has presented no evidence to support her assertion that Honish told Prince that Dixon should not be left unsupervised. As a matter of law, the police were within their rights to surmise from their observation of events and circumstances that Dixon, an elderly woman suffering from some form of dementia, was neglected by Plaintiff, who was her care giver, when Dixon was found disoriented in the lobby of her apartment building and locked out of her apartment. In surmising as much, the police had probable cause to arrest Plaintiff. As Plaintiff cannot show that the police officers lacked probable cause to arrest her, she cannot set forth sufficient facts to show that Defendants violated her constitutional rights by falsely arresting and imprisoning her and summary judgment is appropriate for the Defendants on her claims under § 1983.

Because the Court will grant summary judgment for Defendant's on Plaintiff's civil rights claims, it need not assess Defendants' additional grounds for its motion for summary judgment

with respect to Plaintiff's civil rights claims.

### 2.      Plaintiff's State Law Claims

Plaintiff makes various claims in her Complaint alleging violations of state common law, including false arrest, false imprisonment, intentional and negligent infliction of emotional distress, and common law negligence.  Defendants move for summary judgment on all of Plaintiff's state law claims, as they contend that Plaintiff's claims are barred by N.J. Stat. Ann 59:8-3 and N.J. Stat Ann. 59:8-8 because Plaintiff failed to comply with the notice requirements of the New Jersey Tort Claims Act.  Defendants represent that Plaintiff failed to comply with the requirement that she serve Defendants with a notice of her tort claims within 90 days of their accrual.  See N.J. Stat. Ann. 59:8-8(a).  The incident giving rise to this action, and Plaintiff's arrest, took place on October 4, 2006.  Defendants represent that Plaintiff did not provide notice of her tort claims in compliance with the statute at any time prior to the commencement of the instant action on June 29, 2007.  Plaintiff did not oppose Defendants' motion for summary judgment on her state law claims.  She offers no argument nor evidence to suggest that she did in fact comply with the notice requirements of the Tort Claims Act.

New Jersey law requires that any Plaintiff bringing a tort suit against a public entity or public employee file a pre-suit notification of the claim in writing and within 90 days of the accrual of the action or else be "forever barred" from asserting that cause of action.  N.J. Stat. Ann. 59:8-8; Velez v. City of Jersey City, 817 A.2d 409, 417 (N.J. Super. Ct. App. Div. 2003). A court may extend the 90 day deadline for filing pre-suit notification to as long as one year after the action accrues if the court determines that for sufficient reasons, constituting extraordinary circumstances, a plaintiff failed to meet the requirements of the statute.  N.J. Stat. Ann. 59:8-9.

A claimant is also barred from recovering if two years have elapsed since the accrual of the claim.  Id.  A tort claim generally accrues on the date the tort is committed.  Beauchamp v. Amedio, 751 A.2d 1047, 1050 (N.J. 2000).

There does not appear to be a genuine issue of material fact as to whether Plaintiff filed the requisite notice in this case, as Plaintiff has not contested Defendants' representations. Moreover, Plaintiffs did not seek permission from this Court to file a late notice of claim within a year from the date of the accrual of the action in October 2006. Now, more than two years have elapsed since the accrual of the action, so Plaintiff is barred by the statute.  Therefore, the Court will grant the Defendants' motion for summary judgment on Plaintiff s state law claims because Plaintiffs failed to comply with the pre-suit notification requirement of the New Jersey Tort Claims Act.

## III.    CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment on Plaintiff's Complaint is **GRANTED**.  The accompanying Order shall issue today.


Dated:      2-23-09                                   /s/ Robert B. Kugler
                                                     ROBERT B. KUGLER
                                                     United States District Judge